UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DISTRICT

| | |
|---|---|
| ASHLEY STOCK,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JAMES L. GRAY, *et al.*,<br><br>　　　　　　　Defendants, | Case No. 22-CV-04104-DGK<br><br>Hon. David Gregory Kays |

**R**EPLY **S**UGGESTIONS IN **S**UPPORT OF **P**LAINTIFF **A**SHLEY **S**TOCK'S **M**OTION TO **L**IMIT AND **E**XCLUDE IN **P**ART THE **E**XPERT **T**ESTIMONY OF **D**ENNIS **K**. **M**C**A**LLISTER, **R.**P**H**., FASHP

Although Plaintiff Stock's suggestions span just three pages (Dkt. 52), Defendants' fourteen-page opposition (Dkt. 53) engages little with the substance of Stock's motion. This three-page reply follows.

Stock has not contested the qualifications of Mr. McAllister,[1] yet Defendants spend multiple pages recounting his experience. Dkt. 53 at 8-9, 14. Reciting his qualifications does not provide argument or reason to allow legal conclusions dressed up as expert opinion.

The very first line of Stock's argument section acknowledges that industry standards and practices often qualify as an appropriate subject of expert testimony. Dkt. 52 at 2. Yet Defendants imply that Stock ignores that type of testimony in McAllister's report. Dkt. 53 at 11-12. She has not. It is the reason that she seeks only to *limit* and exclude *in part* McAllister's testimony. Stock has no objection to the admissibility of the portions of the McAllister Report that merely speak to the general practice of pharmacists or industry standards.

If the McAllister Report had gone no further, then Stock would not have filed this motion. But the Report does go further, by trying to put the imprimatur of expert testimony on the Defendants' legal arguments at the core of this case. It does this in two ways: (1) interpreting the challenged provision of Mo. Rev. Stat. § 338.055.7 and (2) drawing conclusions about the law's fit with the state's legislative purposes. Dkt. 52 at 2-3 (quoting Report). Defendants' opposition barely engages the core issue: does Fed. R. Evid. 702 allow these types of expert opinions? Not one case that Defendants introduce (Dkt. 53 at 10, 13-14) even involves testimony on a legal issue, let alone testimony that amounts to an ultimate legal conclusion.

---

[1] Defendants incorrectly call him "Dr. McAllister" at one point. Dkt. 53 at 6.

The closest that Defendants come to engaging with Stock's arguments is the assertion that Stock "misstates and mischaracterizes the report" (Dkt. 53 at 15) when she reads it to interpret the statute itself. The full context of paragraph B.3 makes it clear that the Report is interpretating Mo. Rev. Stat. § 338.055.7 to prohibit only the statements that the medicines have "no use or are ineffective for human use generally." The statement appears right after a sentence stating what (in Mr. McAllister's view) pharmacists may do consistent with the statute, and right before a sentence explicitly referencing "the law here." Report 1.

Most tellingly, the statement appears in the "Statement of Facts" portion of the report and just after the report quotes a portion of the law at issue. Report ¶ B.1. At his deposition, in fact, Mr. McAllister revealed that he had reviewed only that single, second sentence of §338.055.7 in isolation. *E.g.*, McAllister Dep. vol. 1 18:18-24, Jan. 4, 2024, Dkt. 53-3. Yet a complete statutory analysis would consider the whole text and context, including the immediately preceding sentence that uses the identical phrase "for human use." *E.g. Fourth Estate Pub. Ben. Corp. v. Wall-Street.com*, 139 S. Ct. 881, 889 (2019) (rejecting "implausible assumption" that a single term had "different meanings in consecutive, related sentences within a single statutory provision"); *accord* Dkt. 26 at 14-15 (reading the second sentence of § 338.055.7 to "dovetail" with the first). The Report's underbaked interpretation highlights why statutory interpretation is the province of the Court and the legal advocates. It is not the province of an expert witness lacking in legal training like McAllister. Dkt. 53-3 at 53:6-10.

Armed with its interpretation of the challenged statutory provision, the Report then conducts a constitutional tailoring analysis. It lists particular "societal interests at stake" and concludes that the "statute identifies an area where these goals may be furthered" and ultimately that the "law furthers the important societal interests." Report 2-3. These passages read like "fodder for a legal brief, not an expert's report." *Louis Vuitton Malletier*

2

*v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 654 (S.D.N.Y. 2007). The Report speaks for itself; it does not merely discuss "industry practice and standards" and "interests of society or the profession." *Contra* Dkt. 53 at 16. It weighs the statute (as it interprets it) against the government's interests (as it perceives them). It's exactly what Defendants' briefs have done: advance a particular legal argument for the constitutionality of the statute. Dkt. 19-1 at 9-12; Dkt. 24 at 17-19.

Because the Report does more that opine on general standards for pharmacists and the profession of pharmacy, the Court should grant Stock's motion and limit or exclude portions of Mr. McAllister's testimony.

Dated: March 14, 2024

/s/ Jonathan R. Whitehead
Jonathan R. Whitehead, Mo. Bar. 56848
LAW OFFICES OF JONATHAN R. WHITEHEAD LLC
229 SE Douglas, Suite 210
Lee's Summit, MO 64063
Phone: (816) 398-8305
Email: jon@whiteheadlawllc.com

Adam E. Schulman (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, generating notice to all counsel of record.

/s/ Jonathan Whitehead