## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DISTRICT

ASHLEY STOCK,

                Plaintiff,

v.

                      Case No. 22-CV-04104-DGK

JAMES L. GRAY, *et al.*,

                      Hon. David Gregory Kays

                Defendants,

## ASHLEY STOCK'S SUGGESTIONS  IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Table of Contents .................................................................................................................ii

Table of Authorities ............................................................................................................ iii

Introduction..........................................................................................................................1

Response to Defendants' Statement of Uncontroverted Material Facts ...........................................3

Argument............................................................................................................................15

I.       Stock has Article III standing to seek relief from the pharmacist speech ban. ..................15

II.      Stock appropriately brings a pre-enforcement facial challenge; the proper relief is enjoining defendants from enforcing the unconstitutional clause of Section 338.055.7, RSMo. ........................................................................................20

III.     The pharmacist speech ban violates the First Amendment. .................................................23

Conclusion..........................................................................................................................27

Certificate of Service .........................................................................................................29

**Cases**

*1-800-411-Pain Referral Serv., LLC v. Otto,*
    744 F.3d 1045 (8th Cir. 2014) ................................................................................................23

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023) ...............................................................................................................23

*Agostini v. Felton,*
    521 U.S. 203 (1997) ...............................................................................................................22

*Alexis Bailly Vineyard, Inc. v. Harrington,*
    931 F.3d 774 (8th Cir. 2019) ................................................................................................19

*Am. Beverage Ass'n v. City of San Francisco,*
    916 F.3d 749 (9th Cir. 2019) (*en banc*)...............................................................................25

*Am. Sch. of Magnetic Healing v. McAnnulty,*
    187 U.S. 9 (1902)....................................................................................................................24

*Ams. For Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) ...............................................................................................................20

*Apter v. HHS,*
    80 F.4th 579 (5th Cir. 2023)...........................................................................................25, 26

*Banks v. John Deere & Co.,*
    829 F.3d 661 (8th Cir. 2016) ........................................................................................... 13-14

*Christensen v. Harris County,*
    529 U.S. 576 (2000) ...............................................................................................................17

*Conforti v. United States,*
    74 F.3d 838 (8th Cir. 1996) ...................................................................................................19

*Davis v. Caduceus Occupational Med., LLC,*
    No. 4:21-cv-00075-DGK, 2024 WL 1337190 (W.D. Mo. Mar. 28, 2024)...........................4, 5, 9

*Davis v. FEC,*
    554 U.S. 724 (2008) ........................................................................................................ 18

*FBI v. Fikre,*
    601 U.S. 234 (2024) ........................................................................................................ 18

*Griffin v. HM Florida-ORL, LLC,*
    144 S. Ct. 1 (2023) .......................................................................................................... 22

*Harris v. Quinn,*
    573 U.S. 616 (2014) ........................................................................................................ 23

*Harrison v. State Highways & Transp. Com.,*
    732 S.W.2d 214 (Mo. Ct. App. 1987) ........................................................................... 19

*Hoeg v. Newsom,*
    652 F. Supp. 3d 1172 (E.D. Cal. 2023) ........................................................................ 27

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) .................................................................................................... 20

*Independent Stave Co. v. Mo. Highway & Transp. Com.,*
    702 S.W.2d 931 (Mo. Ct. App. 1985) ........................................................................... 19

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ...................................................................................................... 17

*Kucharek v. Hanaway,*
    902 F.2d 513 (7th Cir. 1990) .......................................................................................... 19

*Labrador v. Poe,*
    144 S. Ct. 921 (2024) ...................................................................................................... 22

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) .................................................................................................... 17

*Lowry v. Watson Chapel Sch. Dist.,*
    540 F.3d 752 (8th Cir. 2008) .......................................................................................... 21

*Mader v. United States,*
    654 F.3d 794 (8th Cir. 2011) (*en banc*) ........................................................................ 22

iv

*Matal v. Tam,*
    582 U.S. 218 (2017) ........................................................................................20

*McNaught v. Nolen,*
    76 F.4th 764 (8th Cir. 2023) ...........................................................................18

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
    559 U.S. 229 (2010) .......................................................................................23

*Mo. PSC v. Union Elec. Co.,*
    552 S.W.3d 532 (Mo. 2018) ...........................................................................17

*Moody v. NetChoice, LLC,*
    144 S. Ct. 2283, 2024 WL 3237685 (2024) ...........................................1, 20, 21

*Morton v. Mo. Air Conservation Comm'n,*
    944 S.W.2d 231 (Mo. Ct. App. 1997) .............................................................17

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,*
    472 U.S. 237 (1985) ........................................................................................16

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
    138 S. Ct. 2361 (2018) ...............................................................................23, 25

*Nat'l Rifle Ass'n v. Vullo,*
    144 S. Ct. 1316 (2024) ......................................................................................1

*NetChoice, LLC v. Attorney General, Fla.,*
    34 F.4th 1196 (11th Cir. 2022) ........................................................................21

*New Garden Rest., Inc. v. Dir. of Revenue,*
    471 S.W.3d 314 (Mo. 2015) ...........................................................................19

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) .........................................................................23

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.,*
    83 F.4th 658 (8th Cir. 2023) ..................................................................1, 15, 19

*Pool v. Houston.,*
    978 F.3d 307 (5th Cir. 2020) ...........................................................................18

*Rodgers v. Bryant,*
    942 F.3d 451 (8th Cir. 2019) ................................................................... 19, 21

*RW Inc. v. Andrews,*
    534 U.S. 19 (2001) ................................................................................... 16

*S.B.A List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................................. 15, 18

*Speech First, Inc. v. Schlissel,*
    939 F.3d 756 (6th Cir. 2019) ................................................................... 18

*St. Paul Area Chamber of Commerce v. Gaertner,*
    439 F.3d 481 (8th Cir. 2006) ................................................................... 18

*State v. Carpenter,*
    736 S.W.2d 406 (Mo. 1987) ............................................................... 17-18

*State v. Vaughn,*
    366 S.W.3d 513 (Mo. 2012) (*en banc*) .................................................. 17

*Stenberg v. Carhart,*
    530 U.S. 914 (2000) ................................................................................. 17

*Stock v. Gray,*
    663 F. Supp. 3d 1044 (W.D. Mo. 2023) ........................................... *passim*

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    582 U.S. 449 (2017) ................................................................................. 18

*Turtle Island Foods SPC v. Soman,*
    632 F. Supp. 3d 909 (E.D. Ark. 2022) .................................................... 21

*Union Food & Com. Workers Int'l Union v. IBP, Inc.,*
    857 F.2d 422 (8th Cir. 1988) ................................................................... 17

*United States v. Alvarez,*
    567 U.S. 709 (2012) ............................................................................ 23-24

*United States v. Stevens,*
    559 U.S. 460 (2010) ....................................................................... 17, 19, 20

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
    425 U.S. 748 (1976) ...................................................................................................................23

*Volokh v. James,*
    656 F. Supp. 3d 431 (S.D.N.Y. 2023) ......................................................................................21

*Vt. Right to Life Comm'n v. Sorrell,*
    221 F.3d 376 (2d Cir. 2000) ......................................................................................................19

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ....................................................................................................................18

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,*
    471 U.S. 626 (1985) ...................................................................................................................23

## Constitutional Provisions

U.S. CONST. amend. I ........................................................................................................ *passim*

U.S. CONST. amend. XIV ...................................................................................................26

U.S. CONST. Art. III .....................................................................................................15-20

## Rules and Statutes

Fed. R. Civ. P. 56(c)(1-(2) .........................................................................................7, 10, 13

L.R. 56.1(b)(2) ...................................................................................................................5, 9

Mo. Rev. Stat. Chap. 336 .....................................................................................................17

Mo. Rev. Stat. § 338.055.2 ...................................................................................................20

Mo. Rev. Stat. § 338.055.7 ..................................................................................... *passim*

**Other Authorities**

Lawrence, J.M, *et al.*,
  *The lesson of ivermectin: meta-anlyses based on summary data alone are inherently
  unreliable*, NAT MED 27 (2021) ................................................................................................ 11-12

Manu, P.,
  *Expression of Concern for Kory P, Meduri GU, Varon J, Iglesias J, Marik PE. Review of
  the Emerging Evidence Demonstrating the Efficacy of Ivermectin in the Prophylaxis and
  Treatment of COVID-19*, AM. J. OF THERAPEUTICS 29(2):p e231 (March/April 2022),
  *available at*
  https://journals.lww.com/americantherapeutics/fulltext/2022/04000/expres
  sion_of_concern_for_kory_p,_meduri_gu,_varon.10.aspx ...................................... 11-12

Retraction Notice,
  Journal of Intensive Care Med. 39, iss. 6 (2021)
  https://journals.sagepub.com/doi/10.1177/08850666211049062 ................................... 10

Scalia, Antonin,
  *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17
  SUFFOLK U. L. REV. 881 (1983) ................................................................................................ 19-20

Scalia, Antonin & Bryan A. Garner,
  READING LAW: THE INTERPETATION OF LEGAL TEXTS (2012) .................................................... 16

Szalinski, Christina,
  *Fringe Doctors' Groups Promote Ivermectin for COVID despite a Lack of Evidence*,
  SCIENTIFIC AMERICAN (Sept. 29, 2021), *available at*
  https://www.scientificamerican.com/article/fringe-doctors-groups-
  promote-ivermectin-for-covid-despite-a-lack-of-evidence/ ........................................... 18

## INTRODUCTION

Nothing in Defendants' suggestions (Dkt. 63-1, "Defs. Sugg.") should change this Court's conclusion that the pharmacist speech ban of § 338.055.7, RSMo., unconstitutionally restricts speech based on viewpoint. *See Stock v. Gray*, 663 F. Supp. 3d 1044 (W.D. Mo. 2023). Indeed, this most recent Supreme Court term reaffirms that this Court was correct. Viewpoint discrimination is "uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n v. Vullo*, 144 S. Ct. 1316 , 1326 (2024). "[A] state may not interfere with private actors' speech to advance its own vision of ideological balance" and tilt the marketplace of ideas in its "preferred direction." *Moody v. NetChoice, LLC,* 144 S. Ct. 2283, 2024 WL 3237685, at *16 (2024) (internal quotation omitted).

Now, two years into this litigation, Defendants seek to resurrect a more restrained version of the speech ban through a non-binding Guidance Statement issued two days before the dispositive motion deadline. Dkt. 63-8. As Stock explains in her own summary judgment brief (Dkt. 60, "Pl. Sugg."), this last-minute attempt fizzles because the statute's words do not allow the Board's interpretative revision. Pl. Sugg. 33. And, in any event, the Board's new rationale does not cure the law's constitutional infirmity. Pl. Sugg. 33-34.

Defendants scramble for other procedural grounds to defeat Stock's suit. *See* Defs. Sugg. 38-43 (arguing Stock lacks Article III standing); 49-52 (arguing Stock is not entitled to facial relief). But binding precedent forecloses Defendants' standing argument. *Parents Defending Education v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 667-68 (8th Cir. 2023) (discussing pre-enforcement standing to redress chilled speech). It also forecloses their remedy argument. *Stock*, 663 F. Supp. 3d at 1051-52 (citing authorities); Pl. Sugg. 35 (same).

On the merits, Defendants give little justification for the speech ban beyond what they have previously offered to no avail. *Compare* Defs. Sugg 47, *with* Pl. Sugg. 29-33 (explaining why these rationales, mostly *post hoc* rationalizations, cannot justify the pharmacist speech ban). The

defense fails from the start because the second clause of § 338.055.7, RSMo, does not target commercial advertising (Defs. Sugg. 43, 46-47), nor fraud (Defs. Sugg. 44), nor non-expressive conduct incidentally burdening speech (Defs. Sugg. 49). It targets—on its face—the expression of disfavored views.

But more than that, a grand inconsistency lurks in Defendants' theory of this law. They claim that the FDA's sophomoric tweets stewed a confusion about these drugs that demanded legislative intervention in the form of the pharmacist speech ban (Defs. Sugg. 35-36, 47-49). Simultaneously, they interpret the law the law to offer a safe harbor if a pharmacist disputes the effectiveness of the drugs "consistent with…current FDA guidance." Guidance Statement 1. This paradox can only be resolved by accepting Missouri's position in *Murthy*: the First Amendment demands opening the marketplace to a multiplicity of views, not enlisting a centralized Ministry of Truth to squelch all speech it deems misinformation. *See generally* Defs. Statement of Uncontroverted Material Facts ¶ 37 ("Knowledge is not defined by one organization or source in the context of [a pharmacist's ethical duty to maintain knowledge]").

**RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Plaintiff disputes this fact as she has personally had at least one encounter in which both the prescribing physician and patient became argumentative with her. Stock Declaration Opposing Defendants' Motion for Summary Judgment ¶¶ 6-8 (filed in support of these opposing suggestions as **Exhibit A**). Plaintiff also disputes this fact to the extent it purports to be a characterization of her practice. Namely, "on several occasions" she has contacted prescribing physicians "to dispute the efficacy of both ivermectin and hydroxychloroquine prescriptions for human use in COVID-19 cases." Pl. Resp. to Interrogatory No. 9 (Dkt. 63-7 at 8). Plaintiff's questions, "when [she] instigated these calls to prescribers, involved requests to provide evidence based medicine to prove that the medication was being used at a safe and effective dose for the diagnosis they had (or had not) provided." *Id.*

8.      Plaintiff disputes this fact as it is unclear from the form or context whether it is asserting a generalized fact or a fact or opinion specific to Stock and her practice and experience. Plaintiff admits that her testimony as cited is that it is her general assumption that she has a right to contact the prescriber for issues and questions relating to that prescription. But to the extent Defendants are using the term "contact" as it is used in § 338.055.7, RSMo., and seeking to imply that Plaintiff's testimony is that any patient seeking to fill a prescription with her implies an invitation to dispute the efficacy of

ivermectin tablets or hydroxychloroquine sulfate tablets for human use, that fact is unsupported by the cited materials or any other record evidence. As Plaintiff stated in her complaint and later interrogatory responses, she has "on several occasions [] contacted prescribing physicians in regards to the efficacy of Ivermectin tablets and hydroxychloroquine sulfate tablets for human use *without the prescribing physician or patient first inquiring about the effectiveness of the [medications]*." Pl. Resp. to Interrogatory No. 9 (citing Complaint ¶ 19) (emphasis added).

9.    Plaintiff disputes this fact because it seeks to assert opinion, using the normative term "should," rather than the descriptive language of material fact ("is" or "is not"). It is similarly unclear whether it is attempting to assert a generalized fact or a fact or opinion specific to Stock and her practice and experience. Plaintiff admits that it is her opinion that every medical treatment scenario is context specific and that it would be wrong with respect to most medications, as it would be with respect to those covered by the statute, to deny prescribers could ever prescribe them on an individual basis even where there may be countervailing concerns for safety and efficacy. That said, record testimony shows that Plaintiff "intend[s] to continue to dispute the efficacy of ivermectin and hydroxychloroquine for human use as a COVID-19 treatment or for other human use treatments when [she] determine[s] that a certain prescription warrants it." Pl. Resp. to Interrogatory No. 11 ((Dkt. 63-7 at 9) citing Complaint ¶ 77).

10.    Plaintiff disputes this fact because Defendants attempt to assert multiple facts in a single paragraph and therefore violate Local Rule 56.1(b)(2) and its requirement that "each fact in dispute must be set forth in a separately numbered paragraph." *See Davis v. Caduceus Occupational Med., LLC*, No. 4:21-cv-00075-DGK, 2024 WL 1337190, 2024 U.S. Dist. LEXIS 56017 at *4 (W.D. Mo. Mar. 28, 2024). This asserted fact is also improper because it assumes a definition of "dispute," which is a legal question at issue. *Davis*, 2024 U.S. Dist. LEXIS 56017 at *5 (citing Fed. R. Civ. P. 56(c)).

11.     Admitted.

12.     Admitted that the cited materials reflect her *opinion* on the relative professional roles of prescribing physicians and pharmacists.

13.     Plaintiff disputes this fact as asserted as a categorical matter but admits the fact in general, which is how the cited testimony supports the proposition.

14.     Admitted.

15.     Admitted.

16.     Admitted

17.     Plaintiff disputes this fact as an incorrect characterization of her testimony. Plaintiff's testimony is that she was not taught **off-label dosing** in her doctorate program. Pl. Dep. 14:19-15:7

18.     Admitted, that the UpToDate, Inc. resource says what is claimed. Plaintiff disputes, however, any implication that she and other Missouri-licensed pharmacists are not within the class of "healthcare providers." Pl. Dep. 55:10-18.

19.     Admitted.

20.     Admitted.

21.     Plaintiff disputes this fact because Defendants attempt to assert multiple facts in a single paragraph and therefore violate Local Rule 56.1(b)(2) and its requirement that "each fact in dispute must be set forth in a separately numbered paragraph." *See Davis*, 2024 U.S. Dist. LEXIS 56017 at *4. Plaintiff also disputes this fact as it is unclear from the form or context whether it is asserting a generalized fact or a fact or opinion specific to Stock and her practice and experience. Plaintiff admits that her cited testimony reflects her **general opinion and understanding** of the role of FDA approval for pharmaceuticals. Pl. Dep. 24:2-3 ("As a general question, that's my general answer.").

5

22.     Admitted as to Plaintiff's opinion. Plaintiff disputes this fact to the extent it is attempting to assert a legal conclusion for any portion of the statutory language at issue. *Davis*, 2024 U.S. Dist. LEXIS 56017 at *5 (citing Fed. R. Civ. P. 56(c)).

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Plaintiff disputes this fact because it seeks to assert opinion, using the normative term "should," rather than the descriptive language of material fact ("is" or "is not"). Plaintiff admits that her cited testimony reflects her general opinion.

30.     Plaintiff disputes this fact as to the cited testimony. If the testimony cited was in error and the proper citation is to Pl. Dep. 43:22-24, it is admitted.

31.     Admitted.

32.     Plaintiff disputes this fact because it seeks to assert opinion, using the normative term "should," rather than the descriptive language of material fact ("is" or "is not"). Plaintiff admits that her cited testimony reflects her general opinion.

33.     Plaintiff disputes this fact as to the cited testimony. If the testimony cited was in error and the proper citation is to Pl. Dep. 45:12-19, it is admitted.

34.     Plaintiff disputes this fact as a mischaracterization of her testimony. It is her testimony that a person's ability to ***ascertain*** the truth is affected by the research they have read. Pl. Dep. 46:1-7.

35.     Admitted.

36.     Admitted.

37.     Admitted.

38.     Admitted.

39.     Admitted.

40.     Admitted.

41.     Plaintiff disputes this fact as it is unclear from the form or context whether it is asserting a generalized fact or a fact or opinion specific to Stock and her practice and experience. Plaintiff admits that her cited testimony reflects her general opinion.

42.     Admitted.

43.     Admitted.

44.     Plaintiff disputes this fact as it is unclear from the form or context whether it is asserting a generalized fact or a fact or opinion specific to Stock and her practice and experience. She also disputes this fact as she has personally had at least one encounter in which a prescribing physician became argumentative with her. Stock Declaration Opposing Defendants' Motion for Summary Judgment (Ex. A) ¶¶ 6-8.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted.

51.     Admitted only to the extent that Plaintiff is unaware of the Board taking any actions. Plaintiff objects that, in violation of Rule 56(c)(1)-(2), Defendants do not support the proposition with any record evidence.

52.     Admitted.

53.     Admitted.

54.     Admitted.

55.     Admitted subject to Defendants' expert's opinion that such a statement needs to be qualified with "in these cases or in these treatment plans. You have to go from FDA approval to intended use and what was shown in these studies." McAllister Depo. Tr. (Dkt. 63-5) at 119:20-23; 128:7-19.

56.     Plaintiff disputes this fact based on the contradictory testimony of Defendants' expert. Defendants' expert testified that in the context of an FDA-approved drug that was later shown to have dangerous health effects (at least in the examples of phenylephrine, Fen-Phen and Vioxx), it would be appropriate for a pharmacist to dispute the efficacy or safety of an FDA-approved drug. McAllister Depo. Tr. (Dkt. 63-5) at 146:23-147:18.

57.     Admitted.

58.     Admitted.

59.     Admitted.

60.     Admitted.

61.     Plaintiff disputes this fact based on the contradictory testimony of Defendants' expert. Defendants' expert testified that in the context of an FDA-approved drug that was later shown to have dangerous health effects (at least in the examples of phenylephrine, Fen-Phen, and Vioxx), it would be appropriate for a pharmacist to dispute the efficacy or safety of an FDA-approved drug. McAllister Depo. Tr. (Dkt. 63-5) at 146:23-147:18. Defendants' expert specifically testified about efficacy, that a pharmacist acting within the professional standard of care could deny the efficacy of phenylephrine, which continues to have FDA approval as a decongestant. *Id*. at 117:19-119:11.

62.     Plaintiff disputes this fact based on the contradictory testimony of Defendants' expert. Defendants' expert testified that in the context of an FDA-approved drug that was later shown to have dangerous health effects (at least in the examples of phenylephrine, Fen-Phen, and Vioxx), it would be appropriate for a pharmacist to

dispute the efficacy or safety of an FDA-approved drug. McAllister Depo. Tr. (Dkt. 63-5) at 146:23-147:18. Defendants' expert specifically testified about efficacy, that a pharmacist acting within the professional standard of care could deny the efficacy of phenylephrine, which continues to have FDA approval as a decongestant. *Id*. at 117:19-119:11.

## Hydroxychloroquine

63.     Plaintiff disputes this fact as Defendants attempt to assert multiple facts in a single paragraph and therefore violate Local Rule 56.1(b)(2) and its requirement that "each fact in dispute must be set forth in a separately numbered paragraph." *See Davis*, 2024 U.S. Dist. LEXIS 56017 at *4. Plaintiff admits that the cited materials contain same or similar statements.

64.     Admitted.

65.     Admitted.

66.     Admitted.

67.     Admitted.

68.     Admitted.

69.     Admitted.

70.     Admitted.

71.     Admitted.

72.     Admitted.

73.     Admitted.

74.     Admitted.

## Ivermectin

75.     Admitted.

76.     Admitted.

77.     Admitted.

78.     Admitted.

79.     Admitted that the cited document contains the characterizations of ivermectin as a "miracle drug," including discussion of the MATH+ Protocol results, but controverted because the statements were retracted due to the authors incorrectly counting the death rate. "Apparently […] census and mortality counts from hospital reports [were used] to calculate a mortality rate, but in so doing counted some patients in the denominator but not in the numerator because they died after July 20, 2020, the reported end date of the study," so the study's claim of reduced mortality was false.  See Retraction    Notice,    J    Int    Care    Med.    39,    iss.    6    (2021). https://journals.sagepub.com/doi/10.1177/08850666211049062 [https://web.archive.org/web/20240228185828/https://journals.sagepub.com/doi/10.1177/08850666211049062] Correct figures showed that patients on the full MATH+ protocol actually suffered *higher* death rates than those not on the full protocol, and a rate higher than reported in previous literature. *Id*.

80.     Admitted.

81.     Plaintiff objects to the characterization of Front Line COVID-10 Critical Care Alliance ("FLCCC") as "an expert panel" because no record evidence supports it. *See* Fed. R. Civ. P. 56(c)(1)-(2). Defendants cite a webpage on which FLCCC touts some members as self-proclaimed "experts" but that, even if capable of being turned into admissible evidence, does not support the fact as stated. Plaintiff disputes the fact based on the record evidence that FLCCC has been involved in peddling Ivermectin for uses that Plaintiff does not think are effective.  *See* Complaint ¶ 47. At trial, Plaintiff could also introduce evidence that others consider FLCCC not "an expert panel," but a collection of fringe doctors who do not practice sound medicine. *See, e.g,* Christina Szalinski, *Fringe Doctors' Groups Promote Ivermectin for COVID despite a Lack of Evidence*, SCIENTIFIC AMERICAN (Sept. 29, 2021), https://www.scientificamerican.com/article/fringe-doctors-groups-promote-ivermectin-for-covid-despite-a-lack-of-evidence/.

82.     Admitted that FLCCC did publish such a purported review.

83.     Plaintiff objects in so far as this fact attempts to state the conclusions of the review (i.e., that Ivermectin is a drug with "new uses…continually being found) as unopposed material fact. Plaintiff admits that FLCCC did publish a review that contained those assertions.

84.     Admitted that FLCCC published the quoted text.

85.     Plaintiff objects in so far as this fact attempts to state the conclusions of the review (i.e., that ivermectin caused "statistically significant reductions in mortality") as unopposed material fact. While defendants cite the FLCCC's privately-hosted version of the review, the American Journal of Therapeutics, which published a somewhat less hyperbolic version of the review, issued an "Expression of Concern"—that is, a publisher notice warning that the published article may contain errors. *See* Manu, P., *Expression of Concern for Kory P, Meduri GU, Varon J, Iglesias J, Marik PE. Review of the Emerging Evidence Demonstrating the Efficacy of Ivermectin in the Prophylaxis and Treatment of COVID-19.* AM. J. OF THERAPEUTICS 29(2):p e231, (March/April 2022) ("*Expression of Concern*"), https://journals.lww.com/americantherapeutics/fulltext/2022/04000/expression_of_concern_for_kory_p,_meduri_gu,_varon.10.aspx

[https://web.archive.org/web/20240617071338/https://journals.lww.com/americantherapeutics/Fulltext/2022/04000/Expression_of_Concern_for_Kory_P,_Meduri_GU,_Varon.10.aspx]. The Expression of Concern was based on two articles published in scientific journals that flagged "unexpected stratification across baseline variables"—that is to say, improbable results suggestive of fraud—that went into the meta-analysis. *E.g.* Lawrence, J.M., Meyerowitz-Katz, G., Heathers, J.A.J. *The lesson of ivermectin: meta-analyses based on summary data alone are inherently unreliable.* NAT MED 27, 1853–1854 (2021). https://doi.org/10.1038/s41591-021-01535-y

[https://web.archive.org/web/20230929193128/https://www.nature.com/articles/s41591-

021-01535-y] "The decision is based on the evaluation of allegations of inaccurate data collection and/or reporting in at least one of the primary sources of the meta-analysis contained in the article. … The exclusion of the suspicious data appears to raise questions regarding the ivermectin's potential to decrease the mortality of COVID-19 infection. Currently, the investigation of these allegations is incomplete and inconclusive." *Expression of Concern*. Plaintiff admits that FLCCC did publish a review that contained those assertions.

    86.    Admitted.

    87.    Admitted.

## Legislative Debate

    88.    Admitted.

    89.    Admitted.

    90.    Admitted.

    91.    Admitted.

    92.    Admitted.

    93.    Admitted.

    94.    Admitted.

    95.    Admitted.

    96.    Admitted.

    97.    Admitted.

    98.    Admitted.

    99.    Admitted.

## Context

    100.    Admitted.

    101.    Admitted.

102.     Plaintiff objects to the statement of fact because it attempts to assert Defendants' expert's testimony as to a "public concern," a legal conclusions and integral part of a legal balancing test, which testimony has been precluded by this Court's May 23, 2024, Order Granting Motion to Limit the Expert Testimony of Dennis K. McAllister. Dkt. 57 p. 2-3. Therefore, the evidence relied on for Defendants statement of fact "cannot be presented in a form that would be admissible in evidence." F.R.C.P. 56(c)(2); *Banks v. John Deere & Co.*, 829 F.3d 661, 667 (8th Cir. 2016) (holding summary judgment proper where "reliance on … inadmissible evidence" failed to support an assertion of fact).

103.     Plaintiff objects to the statement of fact because it attempts to assert Defendants' expert's testimony as to a "public concern," a legal conclusions and integral part of a legal balancing test, which testimony has been precluded by this Court's May 23, 2024, Order Granting Motion to Limit the Expert Testimony of Dennis K. McAllister. Dkt. 57 p. 2-3. Therefore, the evidence relied on for Defendants statement of fact "cannot be presented in a form that would be admissible in evidence." F.R.C.P. 56(c)(2); *Banks*, 829 F.3d at 667 (holding summary judgment proper where "reliance on … inadmissible evidence" failed to support an assertion of fact).

104.     Admitted.

105.     Plaintiff objects to the statement of fact because it attempts to assert Defendants' expert's testimony as to the meaning of a disputed term, "dispute," where there is no foundation that he is an expert in linguistics or semantics. Similarly, Plaintiff objects that the evidence to support the statement is being asserted for a legal conclusion as to the meaning of disputed statutory terms, in contravention of this Court's May 23, 2024, Order Granting Motion to Limit the Expert Testimony of Dennis K. McAllister. Dkt. 57 p. 2-3. Therefore, the evidence relied on for Defendants statement of fact "cannot be presented in a form that would be admissible in evidence." F.R.C.P. 56(c)(2); *Banks*, 829

F.3d at 667 (holding summary judgment proper where "reliance on … inadmissible evidence" failed to support an assertion of fact).

106.    Admitted.

**ARGUMENT**

## I. Stock has Article III standing to seek relief from the pharmacist speech ban.

Defendants, for the first time, contest Stock's standing to challenge enforcement of § 338.055.7's speech ban. Defs. Sugg. 38-43. But Stock need not wait for the law to be enforced against her. She may bring suit now to redress the chilling effect that the law already inflicts on her and other Missouri pharmacists. To do so, she must show (1) she intends to engage in conduct "affected with a constitutional interest" (2) that is "arguably proscribed" by the challenged law, and (3) there exists a "credible threat of enforcement." *Parents Defending Education v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658 (8th Cir. 2023) (following *S.B.A. List v. Driehaus*, 573 U.S. 149 (2014)). Stock meets this test.

Without question, Stock's intended speech (*see* Pl. Sugg. 2-4, 20) is affected by a constitutional interest.[1] So Defendants begin by arguing Stock's speech is "not clearly implicated" by the law, especially if read through the lens of the Board's non-binding Guidance Statement. Defs. Sugg. 39-40. But the relevant test from *SBA List* is that her conduct be "arguably proscribed" by the statute, a lower standard than "clearly implicated." *Parents Defending Educ.*, 83 F.4th at 667. In support of their miscalibrated argument, Defendants make much of Stock's deposition testimony that she contacts prescribing physicians to seek information and has never "had an argument." That characterization is not entirely correct; Stock has also testified that conversations "can kind of naturally move in a direction that would be potentially argumentative" and now testifies that she, in the few months since her deposition, has had such an argument develop. Pl. Dep. 56:3-12; Response to Defendants' Statement of Uncontroverted Material Facts ¶ 7; Stock Declaration Opposing Defendants' Motion for Summary Judgment (Ex.

---

[1] Defendants assert (Defs. Sugg. 38, 39) that at summary judgment, Stock can no longer rely on "mere allegations" in the pleadings. But because Stock's pleading is a verified complaint, it can be relied on as an affidavit at summary judgment. Pl. Sugg. 22.

15

A) ¶ 9 ("Disagreements between pharmacist and prescribing physician about medicinal efficacy arise naturally …"), ¶¶ 6-8 (providing one recent example of an argument arising).

But more importantly, this point slices the statutory bologna too thin. A pharmacist doesn't need to initiate an argument to "dispute the efficacy" of the drugs. There's nothing inconsistent between information-seeking and disputing efficacy. This Court has already rejected a similar artificially narrow construction of the statute as "def[ying] common sense." *Stock*, 663 F. Supp. 3d at 1054. The ordinary meaning of "dispute" is "to question the truth or validity of; doubt." *Id.* (citing American Heritage Dictionary). Stock intends to contact prescribing physicians to question the validity and doubt the efficacy of certain human use applications of the drugs. *E.g.*, Pl. Resp. to Interrogatory No. 9. The speech ban at least arguably proscribes her from doing so.

Defendants suggest Stock is further removed from the statute because a patient's approach to her counter constitutes initial "contact" for all subsequent speech. Defs. Sugg. 40. This is an untenable reading of the statute because it reduces the relevant clause to nothing; there could never be a retail pharmacist-initiated contact. Thus, that reading violates the "cardinal principle" that no law should be construed to render a "clause, sentence, or word" "superfluous, void, or insignificant." *RW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *accord Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (applying the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative") (citations omitted); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("every word and every provision is to be given effect"). The statute does not carve out any disputes made after a patient approaches the counter, it only carves out disputes when "the physician or patient inquires of the pharmacist about the efficacy of ivermectin tablets or hydroxychloroquine sulfate tablets."

Departing from the text, Defendants then look to their Guidance Statement and ask for this Court's "defer[ence]" to its interpretation of the statute. Defs. Sugg. 40 (quoting *W.E. Partners*

*II, LLC v. United States*, 119 Fed. Cl. 684, 692 (2015)). Courts no longer defer to agencies on questions of statutory interpretation. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).[2] And it was never Missouri's law either. "[W]hen an administrative agency's decision is based on the agency's interpretations of law, the reviewing court must exercise unrestricted, independent judgment and correct erroneous interpretations." *Morton v. Mo. Air Conservation Comm'n*, 944 S.W.2d 231, 237 (Mo. Ct. App. 1997); *accord Mo. PSC v. Union Elec. Co.*, 552 S.W.3d 532, 539 (Mo. 2018). Deference is only due where the agency "reach[es] [a] decision[] based on scientific and technical data." *Morton*, 944 S.W.2d at 236. Here, the Board did not use Missouri's Administrative Procedure Act to enact a binding regulation or a rule with the force of law, bringing to bear technical expertise. *See* Chapter 536, RSMo. It used an informal, non-binding guidance statement to invent an atextual safe harbor for speech consistent with the standard of care, FDA guidance, or evidence-based science. Pl. Sugg. 33.

Ultimately, the Guidance Statement's interpretation of Section 338.055.7 doesn't withstand scrutiny. "Spotting a constitutional issue does not give a court [or an agency] the authority to rewrite a statute as it pleases." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018); *accord United Food & Com. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 435 (8th Cir. 1988). Interpreters may only apply a narrowing construction if the statutory language is "fairly susceptible" to a "reasonable and readily apparent" construction. *United States v. Stevens*, 559 U.S. 460, 481 (2010); *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000) (quoting *Boos v. Barry*, 485 U.S. 312, 330 (1988)). Missouri follows the same approach, only permitted a limiting construction if the statutory language is "readily susceptible to it." *State v. Vaughn*, 366 S.W.3d 513, 517 (Mo. 2012) (*en banc*). Courts "cannot add words to a statute under the auspice of statutory construction." *Id.* at 518. Nor may they "attempt to redraft [a] statute." *State v. Carpenter*, 736 S.W.2d 406, 408 n.1 (Mo.

---

[2] *Chevron* deference never applied to informally promulgated guidance statements anyway. *See, e.g, Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

1987). Any fair reading of the statute captures—or, at the very least, "arguably proscribes"—speech Stock has and will continue to engage in, and hopes to hear from pharmacists when she is a patient on the other side of the counter. She satisfies the second *SBA List* prong.

She also satisfies the third "credible threat of enforcement" prong. "When dealing with pre-enforcement challenges to recently enacted … statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006) (internal quotation omitted). For several reasons, the Board's eleventh-hour Guidance Statement is not compelling evidence to the contrary.

*First*, it was promulgated two years after the inception of the litigation. Standing, meanwhile, is assessed as of the date "when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008); *accord McNaught v. Nolen*, 76 F.4th 764, 769 (8th Cir. 2023). Post-litigation efforts of defendants to narrow the scope of the statute, or other changed circumstances, instead implicate mootness. *McNaught*, 76 F.4th at 769; *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (case not mooted by Governor's instructions to change enforcement policy); *Pool v. Houston*, 978 F.3d 307, 312-14 (5th Cir. 2020) (disavowal of enforcement of challenged policy); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769-70 (6th Cir. 2019) (statement of one official limiting enforcement plans and "affirm[ing] students' free speech rights"). "[I]ntervening circumstance[s]" during litigation implicate "*mootness*, not standing." *West Virginia v. EPA*, 597 U.S. 697 (2022). The distinction between standing and mootness "matters because the Government, not [plaintiff], bears the burden to establish that a once-live case has become moot." *Id; accord FBI v. Fikre*, 601 U.S. 234, 241 (2024) ("formidable burden"). In the beginning of this litigation, the Board had issued no guidance respecting the law, and Defendants admitted that the law could "potentially cover" of Stock's intended speech. Defendants' Response to Plaintiff's Motion for Preliminary Injunction (Dkt. 24) at 9.

*Second*, the Guidance Statement does not bind the Board under either federal or state law. *See, e.g., Conforti v. United States*, 74 F.3d 838, 841 (8th Cir. 1996) ("the Supreme Court has repeatedly indicated that an estoppel will rarely work against the government…"). "Equitable estoppel is applied against a governmental body only in exceptional circumstances and with great caution." *Harrison v. State Highways & Transp. Com.*, 732 S.W.2d 214, 222 (Mo. Ct. App. 1987); *Independent Stave Co. v. Mo. Highway & Transp. Com.*, 702 S.W.2d 931, 935 (Mo. Ct. App. 1985). Those exceptional circumstances require "affirmative misconduct," and a misunderstanding of operative law does not count. *New Garden Rest., Inc. v. Dir. of Revenue*, 471 S.W.3d 314, 319 (Mo. 2015).

*Third*, because the Board is not bound, "nothing prevents the State from changing its mind." *Vt. Right to Life Comm'n v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000). New board members may join; old ones "may be replaced in office." *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990). Enforcement priorities or strategies shift with the political winds. The informal guidance functions as little more than Defendants' expedient current litigation position. And the Board adopting that posture for litigation "do[es] not rule out the possibility that it will change its mind and enforce the law more aggressively in the future." *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (following *United Food & Com. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988)).

"[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*." *Stevens*, 559 U.S. at 480. To that end, when a statute or policy is new and there is "no established practice of nonenforcement that could assuage concerns," the "plain text" of the law supplies the necessary credible threat of enforcement. *Parents Defending Educ.*, 83 F.4th at 667; *see also Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019). Stock and other retail pharmacists are the "very object" of the regulation; she has standing to sue to enjoin its enforcement. Antonin Scalia, *The*

*Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 894 (1983).[3]

## II. Stock appropriately brings a pre-enforcement facial challenge; the proper relief is enjoining defendants from enforcing the unconstitutional clause of Section 338.055.7, RSMo.

Once again, Defendants insist that Stock's facial challenge fails because the pharmacist speech ban has "valid applications." Defs. Sugg 51 (citing *United States v. Salerno*, 481 U.S. 739 (1987)); *compare* Defendants' Motion to Dismiss (Dkt. 19-1) at 6, 8 (same). Once again, the argument is misplaced. *Stock*, 663 F. Supp. 3d at 1052-53. "In First Amendment cases," the "Court has lowered that very high bar [of *Salerno*'s test]" by "substitut[ing] a less demanding though still rigorous standard" of "overbreadth." *Moody v. NetChoice*, 144 S. Ct. 2383, 2024 WL 3237685, at *8; *accord Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021); *Stevens*, 559 U.S. at 473.

But when, as here, a challenged law restricts pure speech by viewpoint on its face, it cannot be "salvage[d] by virtue of its constitutionally permissible applications." *Iancu v. Brunetti*, 588 U.S. 388, 398 (2019). The finding of viewpoint discrimination "end[s] the matter" and "renders unnecessary any extended treatment of other questions." *Iancu*, 588 U.S. at 399; *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring). The law "must be invalidated." *Iancu*, 588 U.S. at 398. Put differently, a viewpoint discriminatory law has *no valid applications*. *Contra*

---

[3] In addition to concrete harm, Defendants briefly deny that Stock has met the causation and redressability elements of Article III. Defs. Sugg. 42. But these elements accompany the objective chilling effect on speech that Section 338.055.7 casts over pharmacists in the state. The existence of Section 338.055.2(5) does not undermine redressability because, notwithstanding the Guidance Statement, any fair reading of 338.055.7 covers far more than just the "incompetence, misconduct, gross negligence, fraud, misrepresentation or dishonesty" proscribed by 338.055.2(5). Defendants acknowledge that the liability under 338.055.2(5) "depend[s] on the unique circumstances involved." Defs. Sugg. 43. By contrast, 338.055.7 is categorical not contextual. That is one of the precise reasons why 338.055.7 lacks the breathing space that the First Amendment requires, and why relieving pharmacists from the threat of 338.055.7 liability is meaningful redress.

Defs. Sugg. 51. Nothing about the problem with the pharmacist speech ban "rest[s] on speculation." Defs. Sugg. 52 (quoting *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012)). In *NetChoice*, by contrast, the Texas and Florida social media laws were not viewpoint discriminatory speech restrictions on their face. *See NetChoice, LLC v. Attorney General, Fla.*, 34 F.4th 1196, 1224 (11th Cir. 2022) ("we don't think that NetChoice is substantially likely to succeed on the merits of its claim that the entire Act is impermissibly viewpoint-based [because] when a statute is facially constitutional, a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose."). Thus, the Supreme Court remanded for full consideration of the laws' applicability to services like "direct messaging," "events management," "online marketplaces," "financial exchanges" or even "ride-sharing" some of which may not even implicate the platforms' free expression rights. *NetChoice*, 2024 WL 3237685, at *9.

Stock seeks the normal and appropriate relief for a lawsuit that demonstrates a speech regulation to be facially unconstitutional. Pl. Sugg. 35 (citing *Rodgers*, 942 F.3d at 458; *Lowry v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (rejecting government's argument that facial injunction should not have been granted because there was "no evidence of irreparable harm to students other than plaintiffs"); *Turtle Island Foods SPC v. Soman*, 632 F. Supp. 3d 909, 948 (E.D. Ark. 2022) (granting statewide relief on a showing of facial unconstitutionality)). To be sure, however, Stock does bring an as-applied challenge *in addition to* her facial claims, Complaint, (Dkt. 1) ¶96, so the Court can and should grant as-applied declaratory and injunctive relief as a backstop in case Defendants persuade the Eighth Circuit to overrule its existing law on statewide injunctions. *Cf. Volokh v. James*, 656 F. Supp. 3d 431 (S.D.N.Y. 2023) (granting injunction against enforcement of New York law after finding likelihood of success on both facial and as-applied claims).

And disregard binding case law in favor of Judge Stras's dissenting opinion in *Rodgers* is exactly what Defendants are asking this Court to do. (Defendants label Judge Stras's opinion

"concurring in part" (Defs. Sugg. 52) but it was really an opinion "concurring in part and dissenting in part" and his discussion of injunctive remedies was the dissenting portion.) But even if the arguments were persuasive, this Court lacks the authority to do so, as would the Eighth Circuit unless it sits *en banc*. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (*en banc*).

The tea leaves that Defendants read from *Labrador v. Poe*, 144 S. Ct. 921 (2024) also do not suggest that Stock seeks anything unwarranted here. *Labrador* granted a stay of injunction to Idaho in a lawsuit involving an anonymous teen seeking to enjoin the enforcement of *every provision* of a law banning so-called gender affirming care. *Id.* Crucial to that decision, the district court had enjoined enforcement of the entire statute, even portions "that no party has shown, and no court has held, likely offensive to federal law." *Id.* at 923 (Gorsuch, J., concurring). Stock's requested relief is tailored to redress the First Amendment injury she and other pharmacists suffer. The injunction that the Court has entered, and that Stock seeks to make permanent, has and will continue to allow the state to fully enforce the first clause of Section 338.055.7 without limitation. Thus, the concerns of *Labrador* do not apply.

And if this Court were to accept the State's invitation into the tea-leaf reading business, it would not help the State. Some Justices have suggested that despite some skepticism of universal injunctions, First Amendment cases are a special situation with their own "doctrinal complexities" and so "imperfect vehicle[s]" for considering restrictions on universal injunctions. *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 2 (2023) (Kavanaugh, J., joined by Barrett, J., respecting the denial of *certiorari*). Ultimately though, this and other district courts ought not be in the tea-leaf reading business outside of issues of first impression. *E.g., Agostini v. Felton,* 521 U.S. 203, 237 (1997) (cautioning "other courts" against "conclud[ing] [that] more recent cases [of the Supreme Court] have, by implication, overruled an earlier precedent"). Here, there is plenty of authority that a tailored injunction against enforcement is proper relief for a plaintiff who demonstrates a law to be facially unconstitutional under the First Amendment.

### III. The pharmacist speech ban violates the First Amendment.

Last year, this Court cogently explained why the speech ban is an unconstitutional restriction on viewpoint. *Stock*, 663 F. Supp. 3d at 1053-55. Defendants offer no new reason to reconsider that conclusion. Instead, they again attempt to shoehorn 338.055.7 into *NIFLA v. Becerra*'s[4] greater allowance for restrictions on commercial advertising and *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*'s[5] greater allowance for compelled commercial disclosures. Defs. Sugg. 43, 46-47. This defense does not get off the ground because contacting a patient or physician to dispute the efficacy of the drugs is not advertising, and it's not even "commercial speech." Commercial speech "does no more than propose a commercial transaction." *Va State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976) (internal quotation and citation omitted); *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (same). Regulating pharmacists' communication of their views on a professional and scientific question "do[es] not regulate commercial speech." *Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020).

*Zauderer* is even less applicable. That doctrine only applies to "disclosure requirements" in the context of commercial advertising, not to any "affirmative limitation on speech." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010); *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1061 (8th Cir. 2014). "[T]his case involves nothing like that." *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023). By any account, the pharmacist speech ban is a restriction on speech, not a compelled disclosure.

Nor does the pharmacist speech ban merely capture unprotected fraud. *Contra* Defs. Sugg. 44. "Misinformation" is not itself unprotected fraud. That is the very lesson of *United States v. Alvarez* and its distinction between false statements generally and those that generate a "legally cognizable harm" like fraud (e.g., lying about the cost of prescription medication). 567 U.S. 709,

---

[4] 585 U.S. 755 (2018).

[5] 471 U.S. 626 (1985).

719 (2012). *Alvarez* rejects a "categorical rule" making all false speech unprotected. *Id.* Indeed, even under the less-speech-solicitous views of the *Alvarez* concurrence and dissent, "scientific misinformation" is protected. Justice Alito explains:

> "There are broad areas in which any attempt by the state to penalized purportedly false speech would present a grave and unacceptable danger of suppressing truthful speech. Laws restricting false statements about philosophy, religion, history, the social sciences, the arts, and other matters of public concern would present such a threat. The point is not there is no such thing as truth or falsity in these areas or that the truth is always impossible to ascertain, but rather that it is perilous to permit the state to be the arbiter of truth."

*Id.* at 751-52. Justice Breyer, concurring, echoes Justice Alito's concerns. *Id.* at 731-32. This distinction between fraud and bare "misinformation" is itself the "firmly established" historical principle. *See Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 103 (1902) (avoiding "grave questions of constitutional law" by interpreting the Postmaster General to have no authority to prohibit dissemination of heterodox medical opinion as "fraud").

Defendants claim that the pharmacist speech ban "overcomes any scrutiny" that could be applied, listing a bevy of interests supposedly furthered by the restriction. Defs. Sugg. 45, 47. Stock has already detailed in her summary judgment suggestions why these justifications are insufficient to sustain the law. Pl. Sugg. 29-33. Defendants' statement of uncontroverted facts underscores Stock's point that none of these rationales were discussed in the legislative record. In fact, the whole legislative discussion on this bill implicated only the first clause of Section 338.055.7 (providing immunity to pharmacists for dispensing the two medications in accordance with prescriber instructions). Defs. Statement of Uncontroverted Material Facts ¶¶ 89-99. The legislative sponsor, Senator Brattin, had heard from "numerous physicians" subject to complaints at the Board of Healing Arts, weaponized as "a way to muzzle [the physicians'] capability to treat their patients." Defs. Statement of Uncontroverted Material Facts ¶ 94. But nothing suggests that *pharmacists* were involved in those complaints in any respect. And even if they were involved, the law does nothing to address the problem of frivolous complaints ***to the***

*Board of Healing Arts*; preventing pharmacists from contacting patients or doctors is a non-sequitur.

In their suggestions, Defendants broaden the interest to a free-floating interest in preventing consumer confusion about the use of the medications, a confusion that Defendants attribute to the "not a horse" messaging campaign of the FDA. Defs. Sugg. 35, 48. But this rationale fares no better than the others.

To begin, there are no examples in the legislative record of a pharmacist engaging in that type of speech. In fact, Defendants' expert Mr. McAllister testified that in all his years he had "never heard" of a pharmacist getting a prescription and then simply denying that an FDA approved drug has any use at all. McAllister Depo. Tr. (Dkt. 53-3) 84:15-25. He had reviewed thousands of formal complaints against pharmacists as a member of the Board of Pharmacy in Arizona and had never encountered a complaint alleging that a pharmacist "categorically denied the efficacy of an FDA-approved drug." McAllister Depo. Tr. 85:1-6.[6] As a solution to a problem that doesn't exist, the pharmacist speech ban can't withstand any form of heightened scrutiny.

Even if Missouri confronted a genuine problem of consumer confusion and education, the "obvious" solution is a public information campaign that is better and more persuasive, not silencing one side to tilt the debate. *NIFLA*, 585 U.S. at 775; *accord Am. Beverage Ass'n v. City of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (*en banc*) (Ikuta, J., concurring in the result) (noting that public information campaign is less burdensome than compelling speech). A lawsuit, as in *Apter*, against a government agency that exceeds its jurisdiction to sow confusion could be another component of the solution. (Defendants seem to

_____

[6] Defendants inadvertently misquote the record in *Apter v. HHS*. Defs. Sugg. 36 (misquoting *Apter*, 80 F.4th 579, 585 (5th Cir. 2023)). The *Apter* record never says that the "not a horse" messaging proliferated among "medical and professional advisors," it observed the messaging in "medical and professional advisor*ies*."

suggest that the settlement in *Apter* has redressed the problem that the agency caused. Defs. Sugg. 36 n.8, 49 n.20; Defs. Statement of Uncontroverted Material Facts ¶ 87. If so, that's further reason that 338.055.7's speech ban is unnecessary). But it makes no sense to target the speech of private professionals who had nothing to do with sowing confusion.

When assessed against the rationale of "combatting confusion, the Board's Guidance Statement is incoherent. If the FDA's messaging and engagement strategy created dangerous confusion about the medicines (Defs. Sugg. 36, 47-49), a statutory safe harbor for speech "consistent with… current FDA guidance" makes no sense. Imagine that the FDA issues guidance tomorrow disputing the utility of the medicines in an even more extreme way than the hyperbolic "not a horse" tweets. Under the Guidance Statement, a pharmacist could contact doctors to relay that guidance word for word without liability, even though it is the quintessential "problem case" that the law was supposed to address. In short, the Guidance Statement's imaginary safe harbors destroys the hook upon which the Board hangs its entire justification for keeping the statute at all.

Even if the Guidance Statement could surmount its ouroboros problem, the limiting construction offered there still couldn't salvage the constitutionality of the law. Viewpoint discrimination would still taint the law, and it would still chill valuable speech. *See* Pl. Sugg. 33-34. More than that, the Guidance Statement almost concedes that the pharmacist speech ban is unnecessary, because on the Board's reading it substantially overlaps with Section 338.055.2(5). Section 338.055.2(5) therefore constitutes a less restrictive, generally applicable, and viewpoint-neutral alternative, demonstrating that the pharmacist speech cannot survive heightened scrutiny. Pl. Sugg. 29 (citing the least restrictive means requirement).

Additionally, the Guidance Statement injects an element of vagueness into the statute. What counts as "evidence-based scientific data/research" for invoking the Guidance's safe harbor? This standard itself present a Due Process vagueness problem because "evidence-

based scientific data/research" lacks an objective definition and brings with it the possibility of arbitrary enforcement. For example, the Eastern District of California held California's COVID misinformation regulation unconstitutionally vague because it called for misinformation to be judged by "scientific consensus," a nebulous standard that "ma[de] it impossible to understand what the ordinance as a whole prohibit[ed]." *Høeg v. Newsom*, 652 F. Supp. 3d 1172, 1188 (E.D. Cal. 2023). That the Guidance Statement would introduce potentially unconstitutional vagueness that does not exist in the text of the statute is even more reason to reject the narrowing construction that it imagines.

All told, Defendants provide no reason for this Court to reconsider its conclusion that the second clause of § 338.055.7, RSMo, is a viewpoint discriminatory speech restriction and is therefore facially unconstitutional.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion for summary judgment, and grant Stock's motion for the same.

Dated: July 19, 2024     /s/ Jonathan R. Whitehead
           Jonathan R. Whitehead, Mo. Bar. 56848
           LAW OFFICES OF JONATHAN R. WHITEHEAD LLC
           229 SE Douglas, Suite 210
           Lee's Summit, MO 64063
           Phone: (816) 398-8305
           Email: jon@whiteheadlawllc.com


           Adam E. Schulman (*pro hac vice*)
           HAMILTON LINCOLN LAW INSTITUTE
           1629 K Street, NW Suite 300
           Washington, DC 20006
           Phone: (610) 457-0856
           Email: adam.schulman@hlli.org

27

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of July, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system.

/s/ Jonathan Whitehead