UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DISTRICT

ASHLEY STOCK,

        Plaintiff,

v.

    Case No. 22-CV-04104-DGK

JAMES L. GRAY, et al.,

    Hon. David Gregory Kays

        Defendants,

**REPLY SUGGESTIONS IN SUPPORT OF PLAINTIFF ASHLEY STOCK'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Contents......................................................................................................................ii

Argument ................................................................................................................................ 1

    I.      The pharmacist speech ban defies *NIFLA v. Becerra*..........................................................1

    II.     Defendants' reimagination of the statute does not avoid the problem of viewpoint discrimination.......................................................................................6

    III.    Stock has standing and seeks the proper relief against government agents tasked with enforcing a facially unconstitutional statute................................................7

Conclusion............................................................................................................................... 9

Certificate of Service............................................................................................................. 10

Plaintiff and Defendants have cross-moved for summary judgment. *See respectively* Dkt. 60 ("Pl. Sugg."), Dkt. 63-1 ("Defs. Sugg."). The parties have cross-opposed. *See respectively* Dkt. 65 ("Pl. Opp."), Dkt. 66 ("Defs. Opp.").[1] Mindful of avoiding undue repetition, this reply follows.

**ARGUMENT**

I. **The pharmacist speech ban defies *NIFLA v. Becerra*.**

As Missouri recognized in its *Murthy* litigation, ministries of truth have no place in our constitutional Republic. Pl. Sugg 1-2. Attempting to reconcile that position with Section 338.055.7's pronouncement that the effectiveness of two pharmaceutical drugs is beyond professional dispute, Defendants distinguish between "social media" ministries of truth and "professional" ministries of truth. Defs. Opp. 24. The attempt runs smack into *National Inst. for Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ("*NIFLA*"). *NIFLA* teaches that speech is speech; the First Amendment protects scientific and medical opinions just the same when professionals are speaking. *Id.* at 768, 771-73. The First Amendment demands that the government "preserve an inhibited marketplace of ideas"

---

[1] Portions of Defendants' Response to Plaintiff's Statement of Material Facts violate Local Rule 56.1 and Fed. R. Civ. P. 56(c) in failing to specifically controvert factual statements with "cit[ation] to particular parts of materials in the record," or through demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Plaintiff's factual statements not specifically controverted by Defendants per these rules "shall be deemed admitted for the purpose of summary judgment…." *Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762-763 (8th Cir. 2003) (quoting L.R. 56.1). Examples of Defendant's statements that do not wholly or partially controvert Plaintiff's statement of facts are ¶¶ 22, 23, 25, 48, 52, 67, 69, 104, 107 & 108. Several paragraphs also seek to introduce legal argument and conclusions under cover of fact. *See, e.g.*, ¶¶ 12, 78. Such assertions are improper and should be excluded. *See Davis v. Caduceus Occupational Med., LLC*, No. 4:21-cv-00075-DGK, 2024 WL 1337190, 2024 U.S. Dist. LEXIS 56017 at *5 (W.D. Mo. Mar. 28, 2024) (citing Fed. R. Civ. P. 56(c)).

in which professionals can freely air "a host of good-faith disagreements, *both with each other and with the government*, on many topics in their respective fields." *Id.* at 772 (internal quotation omitted; emphasis added). This free marketplace is even more important "in the fields of medicine and public health, where information can save lives." *Id.* at 771 (internal quotation omitted). And, indeed, *NIFLA* uses as an example of professional speech "[d]octors and nurses" "disagree[ing]" on "the benefits of [a particular medical treatment.]" *Id.* at 772.

Defendants continue their struggle to shoehorn the pharmacist speech ban into *NIFLA*'s greater leeway for regulation of advertising and speech incidental to professional conduct. Defs. Opp. 29-34. Again, though, the pharmacist speech ban simply is not a regulation of commercial speech, fraud, or advertising at all. Pl. Opp 23-24. Nothing about § 338.055.7 even requires a commercial transaction, let alone that the dispute be "made to effect a fraud or secure moneys or other valuable considerations." *United States v. Alvarez*, 567 U.S. 709, 723 (2012). A pharmacist might simply dispute the efficacy of the drugs for a particular patient's prescription and encourage the patient to buy no medication at all or to seek a second opinion from another practitioner. The pharmacist speech ban is not a restriction on "swindling schemes." *Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 191 (1948) (cited by Defs. Opp. 32).

And it's not a regulation of speech incidental to professional conduct either, let alone of the sort "long familiar to the bar." *NIFLA*, 585 U.S. at 769 (internal quotation admitted). Defendants' expert, with his decades of experience in the regulation of pharmacy practice, opined that the speech ban is "unique" and he has "not seen it any other format" or "any other arena." Pl. Statement of Material Facts ¶ 80; Defs. Resp. to Pl. Statement of Material Facts ¶ 80. Simply put, it's not a traditional speech-neutral regulation of professional conduct like § 338.055.2(5), nor is it even a novel regulation of professional conduct (as would be a mandate that pharmacists fill certain prescriptions

2

for the drugs). Instead, the second sentence of § 338.055.7 is a direct prohibition on expressing a particular viewpoint.

It's not enough that a statute is codified in the same chapter of the Code as genuine, generally-applicable, content-neutral regulations of professional conduct. *See* Chapter 538, RSMo. "State labels" do not control "the degree of First Amendment protection." *NIFLA*, 585 U.S. at 773 (simplified). "The government cannot regulate speech by relabeling it as conduct." *Otto*, 981 F.3d at 865; *see also Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.3d 658, 667 (8th Cir. 2023) (government "cannot avoid the strictures of the First Amendment simply by defining certain speech as "bullying" or "harassment"). For the same reason, the statute's location and labeling in the Missouri Code does not control whether it regulates speech or conduct. Contra Defs. Opp. 30.

Defendants' opposition—and the Board's Guidance Statement—repeatedly tie the speech ban to § 338.055.2(5)'s preexisting prohibition on "[i]ncompetence, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties of [the] profession …." Defs. Opp. 27, 31, 37. If this interpretation of the speech ban were correct, the speech ban itself would be wholly unnecessary. Pl. Opp. 26. As it turns out, interpreting the speech ban to encompass nothing more than § 338.055.2(5) is just not a plausible statutory reading.

As a matter of text, there is no hook in § 338.055.7 from which to infer that disputing the drugs' efficacy is permitted when consistent with competent pharmacy practice. Pl. Sugg. 33; Pl. Opp. 17-18. "The statute says what it says—or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 426 (2018). "The replace-some-words canon of construction has never caught on in the courts." *United States v. Perkins*, 887 F.3d 272, 276 (6th Cir. 2018); *see, e.g., Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 269 (2023) ("declin[ing] to graft an atextual limitation" onto a statute).

3

As a matter of context, ordinary state and federal interpretative principles counsel against reading the speech ban to be redundant of existing regulations. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007) ("[W]e have cautioned against reading a text in a way that makes part of it redundant."); *Ambers-Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901, 908, n.6 (Mo. 2015) ("This Court will not interpret the statute in a way that renders some phrases mere surplusage.") (internal quotation omitted); *see generally* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174-79 (2012) (discussing the canon against surplusage). The anti-surplusage canon is "strongest" when, as here, the interpretation makes superfluous "another part of the same statutory scheme." *City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) (internal quotation omitted).[2]

It's unclear how Defendants wish to analogize the pharmacist speech ban to "'age verification, recordkeeping, and labeling requirements.'" Defs. Opp. 29 (quoting *Free Speech Coal., Inc v. Atty. Gen.*, 974 F.3d 408, 414 (3d Cir. 2020)). The pharmacist speech ban isn't a speech-neutral verification or recordkeeping regulation. Nor is it a required disclosure, labeling or otherwise. Pl. Opp. 23. As an affirmative speech restriction, it contradicts the traditional understanding of informed consent by professionals. "The doctrine of informed consent, in effect in most states, was developed to counteract the phenomenon of professional dominance and institutionalized deference by increasing the flow of information to patients to both decrease the imbalance in knowledge and power and protect patients from physician coercion." Paula Berg, *Toward a First*

---

[2] Stock has already explained the Defendants' error in asking for deference to the Board's interpretation. Pl. Opp. 16-17. The citation that Defendants offer in their opposition (Defs. Opp. 27)—*Foremost-McKesson, Inv v. Davis*, 488 S.W.2d 193 (Mo. 1972)—is even further afield as it involved the standard for reviewing a challenge to rules that an agency has promulgated. *E.g. State ex rel. Mo. Pub. Defender Comm'n v. Waters,* 370 S.W.3d 592, 597 (Mo. 2012). The Board hasn't promulgated any rules or regulations here.

*Amendment Theory of Doctor-Patient Discourse and the Right to Receive Unbiased Medical Advice*, 74 B.U. L. REV. 201, 230 (1994). Section 338.055.7 doesn't "increase[] the flow"; it cuts it off. Thus, any invocation of informed consent here is even weaker than the invocation in *NIFLA*. *Compare* 585 U.S. at 770 (rejecting the informed-consent analogy for law requiring pregnancy clinics to give notice about outside abortion services), *with* 585 U.S. at 791-93 (Breyer, J., dissenting) (accepting the analogy). The pharmacist speech ban "paternalistically interferes with the ability of physicians and patients to receive potentially relevant treatment information; such barriers to information about off-label use could inhibit, to the public's detriment, informed and intelligent treatment decisions." *United States v.* Caronia, 703 F.3d 149, 166 (2d Cir. 2012). It distorts "deeply personal decisions" by prohibiting "candor [that] is crucial." *NIFLA*, 585 U.S. at 771 (quoting *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1328 (11th Cir. 2017) (*en banc*) (W. Pryor, J., concurring)).

      In a final effort to stuff the speech ban into the "professional conduct regulation" box, Defendants reprise the argument that the law only prohibits "engag[ing] in argument" "irritably or with irritating persistence." Defs. Opp. 7; *accord* Defs. Opp. 29. For good reason, the Court found that this argument "defies common sense." *Stock*, 663 F. Supp. 3d at 1054. The problem for Defendants is that § 338.055.7 doesn't use the intransitive form for the verb "to dispute"; it uses the transitive form: "dispute the efficacy…." "Words are to be given the meaning that proper grammar and usage would assign them," A. Scalia & B. Garner, READING LAW 140 (2012) (quoted in *United States v. Hernandez-Barajas*, 71 F.4th 1104, 1106 (8th Cir. 2023)). Missouri courts likewise adopt the "grammatical construction" of statutes. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 688 (Mo. 2010); *State ex rel. Stinger v. Kruger*, 217 S.W. 310, 316 (Mo. 1919) ("It is a rule in the construction of statutes, that, in the first instance, the grammatical sense of the words is to be adhered to."). When a verb takes a transitive form, the "direct object" (here,

5

"efficacy") "receiv[es] the action" of that verb. *United States v. Sanders*, 966 F.3d 397, 406 (5th Cir. 2020) (cited in *Hernandez-Barajas*, 71 F.4th at 1106.

In this context, the transitive form of "dispute" with the direct object of "efficacy" most naturally means: "to call into question or cast doubt upon" that efficacy. "Dispute," Merriam Webster, (Jul. 29, 2024), https://www.merriam-webster.com/dictionary/dispute; *accord Stock*, 663 F. Supp. 3d at 1054 (offering similar definition from American Heritage Dictionary). Defendants read "dispute" in a vacuum, but that's "no home for a textualist." *Biden v. Nebraska*, 600 U.S. 477, 517 (2023) (Barrett, J., concurring).[3]

## II. Defendants' reimagination of the statute does not avoid the problem of viewpoint discrimination.

Even if this Court were inclined to read absent words into the pharmacist speech ban to create a safe harbor for disputes consistent with FDA guidance or evidence-based medicine, that does not resolve the fatal viewpoint discrimination problem. Pl. Sugg. 31, 33-34; Pl. Opp. 26. To see this, just imagine two pharmacists with completely opposite views on ivermectin. One thinks the drug is ineffective for any human use; the other thinks it is a miracle drug effective for every human use. Neither view reflects the FDA's position, or evidence-based medicine. And both views implicate all the concerns that the state has offered (professional competency, accurate health information, consumer confusion, etc.). Yet the statute prohibits only the expression of the anti-ivermectin viewpoint. That underinclusiveness reveals viewpoint discrimination. *See Johnson v. Minneapolis Park & Rec. Bd.*, 729 F.3d 1094, 1100 (8th Cir. 2013) (quoting *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011)). One carve out for some critical speech doesn't solve the problem. *Contra* Defs. Opp. 33.

---

[3] Defendants advert to Mr. McAllister's interpretation of the statute (Defs. Opp. 30), but this Court has excluded Mr. McAllister's opinion on legal questions such as the interpretation of the statute. Dkt. 57.

Defendants suggest that the speech ban is narrowly tailored, because it encompasses only two medications: ivermectin and hydroxychloroquine. Defs. Opp. 35. That's just another way that the statute's underinclusiveness exposes its viewpoint-based animus. Pl. Sugg. 30, 31-32. Although Defendants might be right (Defs. Opp. 36) that public confusion centered around these two drugs, that is irrelevant because combatting public confusion does not justify a speech restriction in the first place. Pl. Opp. 25-26. Even if there were a reason for special attention to professional pharmacist competence with respect to these two drugs, the speech ban is *still* underinclusive. While it silences pharmacists' dissent, it does not prohibit pharmacists from refusing to fill prescriptions for the drugs. See Pl. Statement of Material Facts ¶81; Defs. Response to Plaintiff's Statement of Material Facts ¶81 (admitting). Nor, again, does the statute prohibit pharmacists from leaning into the confusion and boosting the drugs as miracle cure-alls.

"[T]he history of the Act's passage and its underinclusive application suggest a real possibility" of viewpoint targeting. *NIFLA*, 585 U.S. at 779-80 (Kennedy, J., concurring). So does the unfortunate politicization of the COVID-19 pandemic itself. "[T]aking sides in a politically charged debate about [COVID-19 treatments'] efficacy…is viewpoint discrimination which is fatal to the statute's constitutionality." *Stock*, 663 F. Supp. 3d at 1053.

III. **Stock has standing and seeks the proper relief against government agents tasked with enforcing a facially unconstitutional statute.**

Stock, a pharmacist subject to the speech ban who wishes to engage in speech at least arguably proscribed by the law, has standing to sue to enjoin the enforcement of that law. Pl. Opp. 15-20. Whether or not the *Murthy* majority or dissent was correct on the issue of the individual plaintiffs' standing to challenge federal government jawboning social media companies into censoring users' speech, that principle has no relevance to Stock's standing here. The pharmacist speech ban of § 338.055.7, RSMo. directly regulates

Stock. Unlike in *Murthy*, there's no third-party intermediary like Facebook or Google, to allegedly break the chain of causation. Thus, the "tall order" in *Murthy*—showing that "at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant," 144 S. Ct. 1972, 1986—does not apply here.[4]

An injunction barring Defendants from enforcing the unconstitutional portion of § 338.055.7, RSMo. is the proper remedy for Stock's facial First Amendment claim. Pl. Sugg. 35; Pl. Opp. 20-22; *Stock*, 663 F. Supp. 3d at 1051-52. *Salerno*'s formulation for facial challenges (Defs. Opp. 37) does not apply to First Amendment claims. Because the pharmacist speech ban is viewpoint based, it has no "valid applications" and no "plainly legitimate sweep." *Contrast* Defs. Opp. 25, 37, *with Iancu v. Brunetti*, 588 U.S. 388, 398 (2019); *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 204 (4th Cir. 2022) ("it is logically unavoidable that the [facially invalid] law lacks any legitimate sweep."); *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1185 (N.D. Fla. 2022), *aff'd*, 94 F.4th 1272 (11th Cir. 2024) (similar).

Stock both pleads and seeks the appropriate relief for the constitutional harm at issue in the case. Still, the Court can and should also grant as-applied declaratory and injunctive relief as a backstop in case Defendants persuade the Eighth Circuit to overrule its existing law on statewide injunctions.

---

[4] Defendants repeat the argument that Stock's injury is not redressable because she would still be regulated by § 338.055.2(5), RSMo. Defs. Opp. 37. This argument fails because the scope of the two provisions are distinct, and Stock's speech would not implicate the other statute. Pl. Opp. 20 n.3.

## CONCLUSION

For these reasons, the Court should grant Stock's motion for summary judgment.

Dated: August 2, 2024
/s/ Jonathan R. Whitehead
Jonathan R. Whitehead, Mo. Bar. 56848
LAW OFFICES OF JONATHAN R. WHITEHEAD LLC
229 SE Douglas, Suite 210
Lee's Summit, MO 64063
Phone: (816) 398-8305
Email: jon@whiteheadlawllc.com

Adam E. Schulman (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notifications of such filing to the CM/ECF participants registered to receive service in this matter.

*/s/ Jonathan Whitehead*